UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSEN LLC,

                Plaintiff,

-against-

OFFICE OF FOREIGN ASSETS CONTROL OF THE
U.S. DEPARTMENT OF TREASURY,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

19-cv-405 (MKV)

OPINION AND ORDER
GRANTING
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Osen LLC is a law firm that brings civil actions on behalf of American victims of terrorism. Defendant is the Office of Foreign Assets Control of the United States Department of Treasury ("OFAC"), which, among other responsibilities, creates memoranda and evidentiary packages recommending that the U.S. government designate individuals or entities for sanctions (collectively, "designation packages"). Seeking evidence for lawsuits against several banks that are not parties to this action, Osen submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain the designation packages for three entities: (1) Sanabil Association for Relief and Development ("Sanabil"); (2) Al-Salah Society ("Al-Salah"); and (3) Al-Waqfiya Al-Ri'aya Al-Usra Al-Filistinya Wa Al-Lubnanya ("Al-Waqfiya").

      OFAC withheld or redacted the vast majority of responsive documents, generally asserting FOIA exemptions related to national security. OFAC now moves for summary judgment and has lodged a number of classified agency affidavits with the Court to demonstrate that its withholdings are justified. For the reasons stated below and on the basis of the Court's *ex parte*, *in camera* review of the classified agency affidavits, OFAC's motion for summary judgment is GRANTED.

1

### I. BACKGROUND[1]

**A. OFAC and the Designation Process**

The Office of Foreign Assets Control ("OFAC") is an office within the United States Department of Treasury ("Treasury") that administers and enforces economic sanctions programs [ECF No. 58 ("Fields Decl.") ¶ 7]. Pursuant to statutory authority and executive orders, the U.S. government may designate for sanctions people and entities that provide support to terrorists or terrorist organizations. *See* Fields Decl. ¶¶ 7–10; *see also* 50 U.S.C. §§ 1701–1706; E.O. 13224. Such designations prohibit transactions between the designee and any U.S person and freeze any assets the designee has under U.S. jurisdiction. Fields Decl. ¶ 10.

The process of designating an entity for sanctions starts with an investigation by OFAC. Fields Decl. ¶ 11. These investigations involve both publicly available information and non-public information, including classified information. Fields Decl. ¶ 11. Non-public information used in a designation decision may originate from within Treasury, or it may come from other government agencies, including intelligence agencies. Fields Decl. ¶ 11.

OFAC then drafts a memorandum with a designation recommendation and an "evidentiary package," which the Court refers to collectively as a designation package. Fields Decl. ¶ 12. The designation package summarizes the information obtained through the investigation and appends exhibits, which may contain classified or privileged information. Fields Decl. ¶ 12. Treasury may then designate the subject of the memorandum for sanctions. *See* Fields Decl. ¶ 12. It may also

---

[1] The parties did not submit Local Civil Rule 56.1 statements because "the general rule in this Circuit" is that agency affidavits alone may support a motion for summary judgment in a FOIA case. *Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996). Throughout this opinion, the Court cites only the briefs, declarations, and exhibits that the parties filed on the public docket in connection with OFAC's motion for summary judgment [ECF Nos. 57 ("Def. MSJ"), 58 ("Fields Decl."), 58-8 ("Unclassified *Vaughn* Index"), 59 ("Wolverton Decl."), 60 ("Schmidt Decl."), 62 ("Pl. Opp."), 63 ("Gielchinsky Decl."), 67 ("Def. Reply"), 68]. However, in evaluating the motion and those public filings, the Court has carefully considered and relied on OFAC's classified brief and all of the classified agency affidavits.

issue a press release about such a designation.  Fields Decl. ¶ 12.

### B. Osen and its Other Lawsuits

Osen LLC ("Osen") is a law firm that litigates civil actions seeking to hold banks liable, under the Anti-Terrorism Act and Justice Against Sponsors of Terrorism Act, for financing terrorist organizations [ECF No. 62 ("Pl. Opp.") at 1–2 & n.1].  In particular, Osen has brought a number of lawsuits on behalf of "American victims of attacks committed by Hamas, a U.S. government-designated Foreign Terrorist Organization," against banks that are not parties to, or otherwise relevant to, this case. Pl. Opp. at 1.[2]  In those lawsuits, Osen alleges the banks knowingly provided substantial assistance to a terrorist organization because the banks held accounts for, and provided financial services to, "nominally charitable organizations," which, the banks knew, existed to fund Hamas and were "controlled by" Hamas.  Pl. Opp. at 1–2.

Specifically, Osen alleges that the banks it has named as defendants in its other lawsuits knowingly held accounts for and provided financial services to: (1) Sanabil Association for Relief and Development ("Sanabil"); (2) Al-Salah Society ("Al-Salah"); and (3) Al-Waqfiya Al-Ri'aya Al-Usra Al-Filistinya Wa Al-Lubnanya ("Al-Waqfiya").  Treasury had previously designated each of these entities for sanctions.  *See* Pl. Opp. at 2.

### C. Osen's FOIA Request

Seeking evidence for its lawsuits, Osen submitted a request pursuant to the Freedom of Information Act ("FOIA"), for the memoranda and exhibits supporting Treasury's designations of Sanabil, Al-Salah, and Al-Waqfiya for sanctions.  Fields Decl. ¶ 13.  OFAC searched for responsive records, and there is no dispute about the adequacy of the searches.  *See* Pl. Opp. at 18;

---

[2] *See Averbach et al. v. Cairo Amman Bank*, No. 19-cv-4 (S.D.N.Y.); *Singer et al. v. Bank of Palestine*, No. 19-cv-6 (E.D.N.Y); *Goldstein et al. v. BLOM Bank SAL*, No, 19-cv-9 (E.D.N.Y.); *Miller et al. v. Arab Bank, PLC*, No. 18-cv-2192 (E.D.N.Y.).

3

Fields Decl. ¶¶ 17–21; Def. MSJ at 8.  OFAC located approximately 678 pages of responsive records.  Fields Decl. ¶ 30.  It released 90 pages in full and 90 pages in part.  Fields Decl. ¶¶ 23–25.  OFAC withheld the vast majority of responsive records, asserting various FOIA exemptions.  Def. MSJ at 1; *see* Pl. Opp. at 8–11.

More specifically, OFAC identified 70 pages of responsive records regarding Sanabil's designation.  *See* Fields Decl. ¶ 23, Ex. C. It released 13 of those pages in full.  Fields Decl. ¶ 23.  It released 10 pages with redactions and withheld 47 pages entirely, asserting FOIA Exemptions (b)(1), (b)(3), (b)(6), and (b)(7)(C).  Fields Decl. ¶ 23.

OFAC identified 405 pages of responsive records regarding Al-Salah's designation.  *See* Fields Decl. ¶ 24, Ex. D.  It released 72 pages in full.  Fields Decl. ¶ 24.  It released 58 pages with redaction and withheld 275 pages entirely, asserting Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Fields Decl. ¶ 24.

OFAC identified 203 pages of responsive records regarding Al-Waqfiya's designation.  *See* Fields Decl. ¶ 25, Ex. E.  It released 5 pages in full.  Fields Decl. ¶ 25.  It released 22 pages with redactions and withheld 176 pages entirely, asserting Exemptions (b)(1), (b)(3), (b)(5), (b)(6), and (b)(7)(C).  Fields Decl. ¶ 25.

As part of this process, OFAC identified information and records that had originated from agencies other than OFAC.  Fields Decl. ¶ 21.  OFAC then consulted with the other government agencies, which conducted their own internal FOIA reviews.  Fields Decl. ¶ 21.  Each agency then "returned the records to OFAC with [the] withholdings to be applied" and the exemptions to be asserted.  Fields Decl. ¶ 21.

After OFAC's initial productions, Osen argued that the withholdings and redactions were excessive.  *See* Pl. Opp. at 9–11.  In particular, Osen argued that the documents OFAC had released

about Sanabil and Al-Waqfiya contained less information than the press releases Treasury had issued years earlier announcing the designations of those entities. *See* Pl. Opp. at 9–10, 11. Osen also asked OFAC to re-review a number of the redacted Al-Salah documents. *See* Pl. Opp. at 9. Osen further requested that OFAC create a *Vaughn* Index of the withheld and redacted documents to facilitate challenges to the withholdings and redactions.[3]  Pl. Opp. at 10.

In response, OFAC later re-released, with fewer redactions, one page from the Sanabil package, one page from the Al-Salah package, and one page from the Al-Waqfiya package. Fields Decl. ¶¶ 26–29. OFAC also stated that the Treasury press releases might have drawn on sources other than the OFAC designation packages and that Osen would have to file new FOIA requests to prompt searches of records relevant to Treasury's designation decisions (and press releases) outside of the designation packages. *See* Gielchinsky Decl., Ex. F. OFAC also created a *Vaughn* Index. *See* Gielchinsky Decl., Ex. D; Fields Decl. ¶ 32, Ex. H.

In re-releasing one page of the Al-Salah package, OFAC "inadvertently failed to redact" the titles of two exhibits, Exhibits 52 and 55, that it had previously withheld. Fields Decl. ¶ 29. OFAC's position is that it had previously properly redacted those titles and withheld those exhibits; however, "solely because of the inadvertent disclosure," OFAC would "release Exhibits 52 and 55 to [Osen], together with derivative information concerning these exhibits in the . . . memorandum." Fields Decl. ¶ 29. As discussed below, Osen contends that OFAC inadvertently revealed that it had withheld two "publicly-available press releases," which, according to Osen, shows that OFAC incorrectly understands FOIA's exemptions to "permit withholding of documents Treasury itself

---

[3] "[T]he preparation of a *Vaughn* index," which is a list of a list of withheld and redacted documents and claimed exemptions, is a "method for the Government to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *New York Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 438 & n.3 (2d Cir.), *supplemented*, 762 F.3d 233 (2d Cir. 2014) (citing *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973)).

[has] published." Pl. Opp. at 4–5.

The parties reached an impasse and decided to proceed with summary judgment briefing. However, for nearly a year and a half during the Covid-19 pandemic, OFAC was unable to access the classified documents necessary to prepare and submit this motion [ECF Nos. 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35]. Thereafter, the parties met and conferred, and Osen withdrew some of its objections. *See* Pl. Opp. at 16–19.

Osen continues to object to numerous withholdings and redactions. It raises three general arguments. First, Osen argues that the *Vaughn* Index is inadequate. Second, it argues that OFAC is now withholding information that Treasury previously made public in the press releases about the designations of Sanabil, Al-Salah, and Al-Waqfiya for sanctions. Third, Osen argues that it has largely limited its challenges to "withholdings that OFAC has justified as threatening national security or falling under a national security-related secrecy statute" and that, according to Osen, Sanabil, Al-Salah, and Al-Waqfiya do not pose "a significant threat to the national security of the United States." Pl. Opp. at 5.

Osen specifically objects to the withholding in full of 63 intelligence reports, each of which is an exhibit to one of the three designation memoranda, and each of which is withheld pursuant to both exemption (b)(1) and exemption (b)(3).[4] *See* Pl. Opp. at 18–19; Def. Reply at 2. With respect to these exhibits, Osen stresses that the Unclassified *Vaughn* Index provides no information beyond the title "intelligence report" and assertions that the exhibit is properly withheld in full under Exemptions 1 and 3. Pl. Opp. at 18–19; *see* Fields Decl., Exhibit H ("Unclassified *Vaughn*

---

[4] As the Second Circuit has explained: "Exemption 1 provides for the nondisclosure of matters that are '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.' 5 U.S.C. § 552(b)(1). Exemption 3 provides for the nondisclosure of matters that are 'specifically exempted from disclosure by statute,' provided that the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld.' *Id*. § 552(b)(3)." *ACLU v. DOJ*, 681 F.3d 61, 66 n.1 (2d Cir. 2012).

Index"). Osen also specifically objects to the redactions to Exhibit B of the Sanabil package, which is a Defense Intelligence Agency ("DIA") report, and which OFAC asserts is redacted pursuant to Exemptions 1 and 3. *See* Pl. Opp. at 18; Unclassified *Vaughn* Index at 1. Osen likewise objects to the withholding in full, under Exemptions 1 and 3, of Exhibit 2 of the Al-Waqfiya package, which is another DIA report. *See* Pl. Opp. at 20; Unclassified *Vaughn* Index at 10. Osen adds that, if OFAC is ordered to produce any of these exhibits, it will also need to disclose corresponding derivative information that has been redacted in the designation memoranda.

The Court has carefully reviewed the parties' public briefs, declarations, and exhibits. The Court has also carefully reviewed OFAC's classified brief and each of the classified agency affidavits it lodged with the Court.

## II.     LEGAL STANDARDS

### A. FOIA

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, "calls for broad disclosure" of government records, *ACLU v. DOJ*, 681 F.3d 61, 69 (2d Cir. 2012) (quoting *CIA v. Sims*, 471 U.S. 159, 166 (1985)). However, the Act also recognizes that "public disclosure of certain government records may not always be in the public interest." *ACLU v. DOJ*, 681 F.3d at 69. Thus, FOIA provides that an agency may withhold or redact records pursuant to any of the exemptions defined in section 552(b). *See Sims*, 471 U.S. at 167.

### B. The Relevant Exemptions

As indicated above, Osen challenges numerous withholdings and redactions that OFAC maintains fall under the exemptions in sections 552(b)(1) and 552(b)(3), otherwise known as Exemption 1 and Exemption 3. Exemption 1 provides for the nondisclosure of information that is properly classified and that could reasonably be expected to harm national security if disclosed.

*See* 5 U.S.C. § 552(b)(1); *ACLU v. NSA*, 925 F.3d 576, 588 (2d Cir. 2019). Exemption 3 provides for the nondisclosure of information that a statute other than FOIA prohibits the agency to disclose. *See* 5 U.S.C. § 552(b)(3); *ACLU v. NSA*, 925 F.3d at 588–89.[5]

### C. Summary Judgment in FOIA Cases

FOIA cases are often resolved via motions for summary judgment. *See, e.g.*, *ACLU*, 681 F.3d at 69; *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). As in all cases, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, "[s]ummary judgment is warranted on the basis of agency affidavits" alone "when the affidavits describe the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Wilner*, 592 F.3d at 73. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id*.

Moreover, the Second Circuit has held that courts must assume a "deferential posture in FOIA cases regarding the uniquely executive purview of national security." *Wilner*, 592 F.3d at 76 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)). In such cases, courts should not "undertake searching judicial review." *Wilner*, 592 F.3d at 76 (quoting *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)). Rather, judges ordinarily "defer[] to executive affidavits predicting harm to the national security." *Wilner*, 592 F.3d at 76

---

[5] In its opening brief, OFAC defends its assertion of Exemption (b)(7)(D), which provides for the nondisclosure of "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to disclose the identity of a confidential source . . . [that] furnished information on a confidential basis," 5 U.S.C. § 552(b)(7)(D). Def. MSJ at 16–19. However, it appears that Osen has now withdrawn its objections to the withholdings under Exemption (b)(7)(D). *See* Pl. Opp. at 19; Def. Reply at 2; Unclassified *Vaughn* Index at 4.

8

(quoting *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927).

### D. Segregability

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). As such, agencies must "differentiate among the contents of a document rather than . . . treat it as an indivisible 'record' for FOIA purposes." *FBI v. Abramson*, 456 U.S. 615, 626 (1982). And reviewing courts must specifically consider segregability in ruling on an agency's withholding. *See Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 455 (S.D.N.Y. 2018) (citing *Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 85–86 (2d Cir. 1991)). However, agencies need not disclose non-exempt information that is "inextricably intertwined" with exempt information. *Hopkins*, 929 F.2d at 85. Information is inextricably intertwined if disclosure of the non-exempt information would "compromise" the confidentiality of the exempt information. *Id*.

### III.     ANALYSIS

### A. OFAC Has Properly Asserted Exemptions 1 and 3.

In the public versions of its brief and the Wolverton Declarations [ECF Nos. 59, 68], OFAC explains in general terms why all of its contested withholdings are proper under Exemption 1 and Exemption 3. The Court has carefully reviewed the classified agency affidavits that OFAC submitted in connection with this motion. The classified agency affidavits support and substantiate OFAC's public representations. The Court finds that OFAC has properly asserted Exemption 1 and Exemption 3 and has disclosed reasonably segregable information.

As noted above, Exemption 1 exempts from disclosure information that is currently and properly classified and that could reasonably be expected to harm national security if disclosed.

*See* 5 U.S.C. § 552(b)(1); *ACLU v. NSA*, 925 F.3d at 588. The current standards and procedures for classification are set forth in Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526"). Its requirements include that: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or . . . under the control of the United States Government"; (3) the information must pertain to one or more enumerated categories of protected information listed in section 1.4 of the Executive Order; and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1)-(4).

In the public version of the Wolverton Declaration, Thomas J. Wolverton, a Department of Treasury official with original classification authority furnishes the bases for the classification of the records that OFAC withheld under Exemption 1. *See* Wolverton Decl. ¶¶ 4–14. Wolverton explains that one or more original classification authorities classified the information withheld pursuant to Exemption 1, which consists of foreign government information, intelligence sources or methods, cryptology, and the foreign relations or foreign activities of the United States, including confidential sources. *See* Wolverton Decl. ¶ 10. And he affirms that "disclosure of this information could reasonably be expected to cause serious or exceptionally grave damage to national security." Wolverton Decl. ¶ 12.

Wolverton also explains in general terms the nature of the potential damages, including that it could: "reveal the strengths, weaknesses, and gaps in United States government intelligence coverage"; "reveal the resources and capacity of the United States government to collect and share certain types of intelligence at different points in time"; "reveal whether or not certain organizations within the U.S. intelligence community have collected or reviewed intelligence

10

relating to specific entities or persons"; enable "adversaries [to] alter their behavior to avoid detection or use countermeasures to undermine U.S. intelligence capabilities and render collection efforts ineffective"; and compromise the future use of "sources, techniques, and methods" and potentially risk harm to specific individuals. Wolverton Decl. ¶ 11.

The classified agency affidavits that OFAC lodged with the Court support these representations with additional information. After careful review, the Court finds that the classified declarations provide "reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Wilner*, 592 F.3d at 73. Moreover, the Court finds no evidence of agency bad faith, nor any other reason to second-guess the facially plausible predictions of harm to national security set forth in the classified declarations. *See Wilner*, 592 F.3d at 76; *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927. The Court further finds, based on information in the classified agency affidavits, that OFAC released all reasonably segregable information.

OFAC has likewise properly asserted Exemption 3. As noted above, Exemption 3 exempts from disclosure under FOIA information that other statutes prohibit the agency from disclosing. *See* 5 U.S.C. § 552(b)(3). In this context, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72. Here, OFAC has withheld information about intelligence sources and methods pursuant to 50 U.S.C. § 3024(i)(1) of the National Security Act. OFAC has also withheld, under Exemption 3, information protected by the Defense Intelligence Agency pursuant to a separate statute, which provides that "no provision of law shall be construed to require the disclosure of" either "the organization or any function of" certain specified intelligence organizations within the Department of Defense. 10 U.S.C. § 424. Based on the Court's careful review of the classified affidavits OFAC

11

submitted, the withheld materials fall within the coverage of these statutes.

### B. Osen's Arguments Lack Merit.

One of Osen's principal complaints is that OFAC has given Osen too little information to effectively contest OFAC's withholdings. *See* Opp. at 3, 4, 15, 27. But Osen has contested the withholdings by bringing this case. And the Court has conducted a careful *ex parte* review of the classified agency affidavits that justify, with "reasonably specific detail," the contested withholdings. *Wilner*, 592 F.3d at 73. The Court appreciates that the abstract descriptions in OFAC's public submissions, including the Unclassified *Vaughn* Index—and, now, in this Opinion—may not be completely satisfying to a litigant. However, while the Court is "mindful of our legal system's preference for open court proceedings," in this context, the Court's "*ex parte, in camera* review of . . . classified materials" is the appropriate response to Osen's challenges. *Wilner*, 592 F.3d at 76. And, ultimately, a *Vaughn* Index and agency explanation are tools for the district court, "not ends in themselves." *Donovan v. FBI*, 806 F.2d 55, 58–59 (2d Cir. 1986), *abrogated on other grounds* by *DOJ v. Landano*, 508 U.S. 165 (1993).

Osen also generally argues that OFAC is withholding information that Treasury previously made public. Osen stresses that, when OFAC inadvertently disclosed the titles of Exhibits 52 and 55 to the Al-Salah package, OFAC revealed that it had previously withheld two "publicly-available press releases," and, according to Osen, this shows that OFAC incorrectly understands FOIA's exemptions to "permit withholding of documents Treasury itself [has] published." Pl. Opp. at 4–5. Based on the Court's review, OFAC is not currently withholding information that was officially acknowledged in Department of Treasury press releases.

The Second Circuit applies a "strict test" in assessing claims of official disclosure of classified information. *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). Under that test,

12

"[c]lassified information that a party seeks to obtain . . . is deemed to have been officially disclosed only if it (1) '[is] as specific as the information previously released,' (2) 'match[es] the information previously disclosed,' and (3) was 'made public through an official and documented disclosure.'" *Id*. (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)). The Court has carefully reviewed Osen's arguments and, as part of its *ex parte*, *in camera* review, compared the public and withheld information. The Court finds that the withheld information is more specific than, and in some instances different from, the statements in press releases.

The Court also notes that, in responding to Osen's FOIA request, OFAC identified information that originated with other agencies and consulted with those agencies about the proper withholdings to apply. *See* Fields Decl. ¶ 21; *see also Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016). As discussed above, the potential disclosure of whether or not particular organizations within the intelligence community have collected or reviewed intelligence is itself a justification for applying a FOIA exemption. *See* Wolverton Decl. ¶ 11; *see also N.Y. Times v. FBI*, 297 F. Supp. 3d 435, 450 (S.D.N.Y. 2017). Moreover, it is well established that a particular fact may be publishable in one context but properly classified in another context. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765–66 (2d Cir. 1990).

Finally, Osen asserts that OFAC should disclose more information because, according to Osen, Sanabil, Al-Salah, and Al-Waqfiya do not pose "a significant threat to the national security of the United States." Pl. Opp. at 5. Osen asserts that information about Sanabil cannot pose any threat because that organization "was shuttered nearly 20 years ago." Pl. Opp. at 5. And, Osen asserts, OFAC has elsewhere released more information about entities "designated for their support for the Taliban and Al Qaeda, which (particularly at the time of the FOIA productions)

presented a much greater threat to Americans." Pl. Opp. at 5.

The Court does not credit these arguments. The Court owes deference to the judgments of the executive branch, not Osen, with respect to potential harms to national security. *See Wilner*, 592 F.3d at 76. Moreover, there are obvious reasons why the need to protect information in the Sanabil package might outlast the organization itself. For example, disclosure could compromise future use of the same "sources, techniques, and methods. Wolverton Decl. ¶ 11. Neither Osen, nor the Court is in a position to compare unrelated disclosures about entities designated for their support for the Taliban and Al Qaeda with the withholdings in this case. Rather, the Court must accept OFAC's logical and plausible explanations for the withholdings in this case, which are supported, in reasonable detail, by classified affidavits. *See Wilner*, 592 F.3d at 73, 76.

The Court has also considered all of Osen's other arguments and concludes they lack merit.

## IV.    CONCLUSION

For the reasons stated above and supported by the classified agency affidavits submitted to the Court, OFAC's motion for summary judgment is GRANTED. Accordingly, the Clerk of Court respectfully is requested to terminate the motion at docket entry 56 and to close this case.

**SO ORDERED.**

Date: September 12, 2023  
New York, NY

*[Signature: Mary Kay Vyskocil]*

**MARY KAY VYSKOCIL**  
**United States District Judge**